UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHRISTOPHER KING,

             Plaintiff,

v.

UNKNOWN PARTY,

             Defendant.

_____/

Case No. 2:26-cv-64

Honorable Robert J. Jonker

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint[1] indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] On April 13, 2026, Plaintiff filed a letter requesting that the Court appoint counsel in this case. (ECF No. 3.) In addition to requesting counsel in this letter motion, Plaintiff also set forth additional facts related to the factual allegations in Plaintiff's complaint. In deference to Plaintiff's *pro se* status, the Court will consider the facts set forth in the letter motion (ECF No. 3) as part of Plaintiff's "complaint."

**Discussion**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff does not identify any Defendant in his complaint. (*See* Compl., ECF No. 1.)

Plaintiff alleges that on February 25, 2026, mailroom staff at URF rejected delivery of Plaintiff's magazines because, pursuant to MDOC Policy Directive (P.D.) 05.03.118, ¶ CC, magazines must be sent directly from the vendor or publisher to the prisoner. (*Id*., PageID.1; Notice of Package/Mail Rejection, ECF No. 1-1, PageID.7.) That same day, February 25, 2026, Plaintiff received notice of the rejection, and Plaintiff requested a hearing regarding the rejection. (Compl., ECF No. 1, PageID.1 (indicating that Plaintiff sent a letter to the mailroom requesting a hearing); Feb. 25, 2026, Letter to Mailroom, ECF No. 1-1, PageID.8; Notice of Package/Mail Rejection, ECF No. 1-1, PageID.7 (checking the box to indicate that Plaintiff requested a hearing regarding the rejection).)

Plaintiff states that P.D. 05.03.118, ¶ E provides that "[p]rior to rejecting the mail for violation of this policy, a prisoner is entitled to a fact-finding hearing conducted pursuant to Administrative Rule 791.3310 unless otherwise stated in this policy." (Compl., ECF No. 1, PageID.1–2.) "While awaiting the hearing, [Plaintiff] procured a copy of the receipts of purchase and wrote a second letter to the mailroom showing that [Plaintiff] indeed had proof that the magazines were ordered directly from the publisher and sent directly to [Plaintiff]." (*Id*., PageID.1; *see* Undated Kite to Mailroom & JPay Emails, ECF No. 1-1, PageID.9–11 (providing a billing address for a non-incarcerated individual and a shipping address for Plaintiff).)

2

On March 9, 2026, Plaintiff received notice that the rejection of his magazines was upheld by "ARUS M. LaCrosse." (Compl., ECF No. 1, PageID.1; Mar. 9, 2026, Administrative Hearing Report, ECF No. 1-1, PageID.6.) In a written March 9, 2026 Administrative Hearing Report, notifying Plaintiff that the rejection had been upheld, ARUS LaCrosse set forth written statements from the reporting staff member and Plaintiff about the matter, and the report also set forth LaCrosse's findings. (Mar. 9, 2026, Administrative Hearing Report, ECF No. 1-1, PageID.6.) Plaintiff asserts that he was not physically present at the hearing, and that as a result, he was unable to present his evidence or defense in person. (*See* Compl., ECF No. 1, PageID.1.) Plaintiff asked the hearing officer "ARUS M. LaCrosse" why the hearing was conducted without Plaintiff being there in person, and "ARUS M. LaCrosse" said that the "mailroom did the investigation and couldn't prove that the magazines were sent directly to [Plaintiff]." (*Id.*) "ARUS M. LaCrosse" further told Plaintiff to "write a grievance." (*Id.*) Plaintiff claims that his right to due process was violated because he was "denied [his] right to be present at the hearing and speak on his own behalf, pursuant to Administrative Rule 791.3310." (*Id.*, PageID.3.)

On March 12, 2026, Plaintiff alleges that his legal mail, an order from the Michigan Court of Appeals, was opened outside of his presence, copied, and sent to Plaintiff "via institutional mail." (Mot., ECF No. 3, PageID.13.) Plaintiff claims that his constitutional rights were violated when these mailroom employees opened Plaintiff's legal mail outside of Plaintiff's presence. (*Id.*, PageID.15–16.) And, Plaintiff asserts that the opening of his legal mail was in "direct retaliation" for filing grievances against URF staff regarding his rejected magazines and for filing grievances regarding alleged sexual misconduct from staff members. (*Id.*, PageID.13.)

On March 13, 2026, Plaintiff filed a grievance regarding the hearing for his rejected magazines occurring without him being physically present. (*Id.*) "Following that grievance,

3

[Plaintiff] was forced to send out the rejected mail at [Plaintiff's] expense (using what little funds that [Plaintiff] had), even though [Plaintiff] was denied [his] right to a hearing." (*Id*.) In the grievance, Plaintiff "mentioned that [he] feared retaliation, such as unfavorable treatment (i.e. transfers to other facilities outside [of his] region)[.]" (*Id*.) On March 19, 2026, Plaintiff was transferred to KCF, which Plaintiff argues was in retaliation for filing the grievance. (*Id*.)

On April 2, 2026, while at KCF, Plaintiff received a grievance rejection letter in the mail from URF for his March 13, 2026 grievance. (*Id*., PageID.14.) Plaintiff states that URF denied his grievance the same day that he was notified of his transfer to KCF, thus Plaintiff missed the 14-day deadline to timely appeal the grievance rejection to Step II. (*Id*.) Plaintiff states he cannot afford to purchase envelopes and postage to mail a Step II grievance to URF. (*Id*.)

Plaintiff does not specify what relief he seeks in his complaint. (*See generally* Compl., ECF No. 1; Mot., ECF No. 3.)

## II.    Plaintiff's Motion to Appoint Counsel

On April 13, 2026, Plaintiff filed a motion to appoint counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). The Court may request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. *Lavado*, 992 F.2d at 606. In determining whether to exercise its discretion to appoint counsel, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See id*. The Court has carefully considered these factors and has determined that, at this time, the assistance of

4

counsel is not necessary to the proper presentation of Plaintiff's position. Therefore, Plaintiff's motion to appoint counsel (ECF No. 3) will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

5

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Failure to Name a Defendant

Plaintiff does not identify a Defendant in his complaint. Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Plaintiff does not name any individual as a Defendant in the caption of his complaint.

Plaintiff's complaint alleges that mailroom staff at URF wrongfully rejected delivery of Plaintiff's magazines and opened Plaintiff's legal mail outside of his presence, and that Plaintiff was then transferred to a different correctional facility in retaliation for filing grievances. (Compl., ECF No. 1, PageID.3; Mot., ECF No. 3, PageID.13, 16.) However, these claims involve unidentified URF staff that are not named as defendants. Fed. R. Civ. P. 10(a). And to the extent that Plaintiff intended to name the URF mailroom staff as Defendants, any "[s]ummary reference to a single, five-headed 'Defendants' [or 'staff'] does not support a reasonable inference that each Defendant is liable…." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Under § 1983, the alleged

6

deprivation of a right must be caused by a person acting under color of state law. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne*, 655 F.3d at 564 (citation omitted); *see also Iqbal*, 556 U.S. at 676.

The references to the URF mailroom in Plaintiff's complaint do not support a reasonable inference that each person working for that entity violated Plaintiff's constitutional rights. *See Boxill*, 935 F.3d at 518. Accordingly, Plaintiff's claims against these non-party individuals or groups of individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

### B.    ARUS M. LaCrosse

Although Plaintiff does not identify any Defendant in this action, he does reference the hearing officer, "ARUS M. LaCrosse" (hereinafter "LaCrosse"), in the body of his complaint. (*See* Compl., ECF No. 1, PageID.1.) Even generously construing Plaintiff's complaint to name LaCrosse as a Defendant, as explained below, Plaintiff fails to state a claim against LaCrosse.

Plaintiff alleges that LaCrosse violated Plaintiff's right to due process by depriving Plaintiff of an in-person hearing regarding his rejected magazines, which Plaintiff alleges was required by "Administrative Rule 791.3310." (*See* Compl. ECF No. 1, PageID.1–3.)[2]

---

[2] Because Plaintiff specifically alleges that LaCrosse violated his Fourteenth Amendment due process rights, the Court does not construe Plaintiff's complaint to raise any other claims against LaCrosse. Moreover, Plaintiff's allegations do not suggest that he intended to raise a First Amendment claim against LaCrosse regarding the initial rejection of his mail because LaCrosse was not involved in this initial rejection. Instead, the initial rejection was made by the unnamed mailroom staff.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989))). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986); *see also McGlothan v. Aikens*, No. 2:23-cv-126, 2023 WL 5088898, at *5–6 (W.D. Mich. Aug. 9, 2023) (finding that a prisoner who received notice, a hearing, and the opportunity to appeal the rejection of a magazine received due process of law), *aff'd*, 2024 WL 34727 (6th Cir. Jan. 10, 2024). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Martin*, 803 F.2d at 244.

In this case, Plaintiff's allegations show that he received all of the process due to him with regard to the rejection of his magazines. Specifically, Plaintiff received notice of the rejection, the opportunity to request a hearing (which he did then request), and a written Administrative Hearing Report, setting forth LaCrosse's findings and written statements from the reporting staff member and Plaintiff about the matter. (Mar. 9, 2026, Administrative Hearing Report, ECF No. 1-1, PageID.6.) Plaintiff was then able to challenge LaCrosse's upholding of the rejection by filing a grievance about the matter. (*See* Mot., ECF No. 3, PageID.13); *see also* MDOC P.D. 05.03.118, ¶ KKK (eff. Feb. 9, 2026) ("Appeal of Rejected Mail[:] . . . A prisoner who disagrees with the outcome of a hearing [regarding the rejection of mail] may file a grievance. . . .").

8

Although Plaintiff claims that LaCrosse violated "Administrative Rule 791.3310," which is referenced in MDOC P.D. 05.03.118, ¶ E, and provides that a prisoner shall be present at a hearing, "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008); *see also McGlothan*, 2024 WL 834727, at *2 ("[A] policy violation does not equate to a constitutional violation."). As noted above, due process requires notice of the mail rejection, an opportunity to challenge the rejection, and the opportunity to appeal, *see Martin*, 803 F.2d at 243–44, all of which Plaintiff received.

Moreover, to the extent that Plaintiff claims that he was deprived of his property by a "random and unauthorized act" without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a prisoner who was deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff claims that "not affording [him] the right to be present for the hearing" was a "denial of an adequate 'post-deprivation remedy.'" (Mot., ECF No. 3, PageID.15.) But the hearing that Plaintiff refers to was the *pre*-deprivation hearing. Therefore, Plaintiff does not allege

9

that the state *post*-deprivation remedies are inadequate. Plaintiff has numerous state post-deprivation remedies available to him. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim against LaCrosse.

## Conclusion

For the reasons set forth above, the Court denies Plaintiff's motion to appoint counsel. (ECF No. 3.) Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this opinion will be entered.

Dated:    July 27, 2026                                     /s/ Robert J. Jonker
                                                            Robert J. Jonker
                                                            United States District Judge